MARY C. REED et al., Respondents, *v.* THOMAS GANNON, impleaded, etc., Appellant.

Notice to a purchaser of property of the existence of liens or encumbrances thereon is sufficient, in the absence of explanation, to charge him with notice of any and all liens or encumbrances which an inquiry would have disclosed. It is not necessary in such a case to show actual notice of the particular instrument creating a lien to deprive him of the character of a *bona fide* purchaser.

By articles of separation between a husband and wife, certain chattels were conveyed to a trustee for the benefit of the wife, and were accepted in full satisfaction for her support and maintenance, on condition that all mortgages, etc., thereon should be discharged by the husband in ninety days, which he covenanted to do. The instrument declared that the wife did not admit the validity, as against herself, of any outstanding mortgage, etc., and that the husband did not assume any liability beyond the amount of existing liens. At the time of the execution of the instrument a chattel mortgage existed upon the pro-

perty, which was not filed, and was unknown to the wife or trustee. No inquiry was made by them as to encumbrances. *Held* (PECKHAM, J., dissenting), that the language of the instrument implied the existence of mortgages, and was sufficient to put them upon inquiry, and that they were chargeable with notice of the existence of the mortgage in question.

Also *held* (GROVER, J.), that the trustee was not a purchaser for value.

It seems that where chattels are purchased by the husband as presents for the wife, and are notoriously recognized as her property, it does not follow from the fact that they are brought into the house jointly occupied by them (they being so brought in as her property) that they are in his possession or legally under his control, and in the absence of fraud her title will be good, even as against subsequent creditors of or purchasers from her husband.

(Argued May 28, 1872; decided November 26, 1872.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiffs, entered upon the decision of the court at Special Term.

This action was brought to restrain defendant Gannon from foreclosing a mortgage upon certain chattels, executed to him by defendant Reed.

The plaintiff, Mary C. Reed, was the wife of defendant, Osmon Reed, Jr. They separated, and on April 27th, 1867, a deed of separation was duly executed, to which they and plaintiff Nunez, as trustee for the wife, were parties, whereby Reed transferred to the trustee, in trust for the wife, the chattels mentioned in the complaint, he covenanting to pay off and discharge "any lien, mortgage or encumbrance, of whatsoever kind or description, existing on the same, within ninety days, the same being received by the wife and her trustee (parties of the second part) in full satisfaction for her support and maintenance, on condition that all liens, etc., be discharged as aforesaid.

The said deed also contained the following clauses:

"And it is further understood and agreed by the parties hereto, that the said Mary Catharine Reed does not hereby admit the validity, as against herself, of any outstanding

mortgage, lien or encumbrance thereon; and further, that nothing herein contained is to be construed as an admission on the part of the said Reed that he is liable for the maintenance or support of the said Mary Catharine Reed while living separate and apart from him, or that he hereby assumes any liability beyond the amount of existing liens on said furniture and effects. And the said trustee, in consideration of the premises, and of one dollar to him duly paid, does hereby covenant, promise and agree, to and with said party of the first part, to indemnify and save him harmless of, against and from all debts of his said wife contracted, or that may hereafter be contracted by her."

On the 16th February, 1867, Reed gave to defendant Gannon a chattel mortgage upon the property in question to secure the payment of a loan of $1,500. The mortgage was not filed at the time of the execution of the trust deed above mentioned, and neither the wife nor her trustee had knowledge of its existence.

In July, 1867, defendant Gannon attempted and threatened to take possession of the property under his chattel mortgage. Reed was then insolvent. It appeared upon the trial that a greater portion of the articles in question were given Mrs. Reed by her husband as wedding or birthday presents, and that they were recognized as her property.

The court held that the articles were not the separate property of the wife, but belonged to her husband at the time of the execution of the trust deed; but that plaintiff Nunez as trustee stood in the position of purchaser in good faith, and as against both plaintiffs the mortgage was void.

*Amasa J. Parker* for the appellant. Plaintiffs had notice of the mortgage in question when the articles of separation were executed and delivered. (*Galatin* v. *Erwin*, Hopkins' R., 48; Willard's Eq. Jur., 608, 286, and cases there cited; *Jewett* v. *Palmer*, 7 John. Ch., 65, 68; *Harrison* v. *Southcote*, 1 Atk., 538; *Story* v. *Lord Windon*, 2 id., 630; *Thomas* v. *Graham*, Walker Ch. R., 117; *Putnam* v. *Hubbell*, 42 N.

Y., 106; *Wast* v. *Flinn*, 43 id., 23; *Austin* v. *N. J. Co.*, id., 76; *Draper* v. *Stouvenal*, 38 id., 219; *Cox* v. *James*, 45 id., 557; 2 R. S., 5th ed., 222, § 5.) Whenever the purchaser has sufficient to put him on inquiry, he is in equity considered as having notice. (*Pitney* v. *Leonard*, 1 Paige, 461; *Hawley* v. *Cramer*, 4 Cow., 717; *Williamson* v. *Brown* 15 N. Y., 354; *Pendleton* v. *Fay*, 2 Pa., 205; *Howard Ins. Co.* v. *Halsey*, 8 N. Y., 275; *Brush* v. *Ware*, 15 Pet., 112; *Jenkins* v. *Eldredge*, 3 Story, 182.)

*James Clark* for the respondents. The transfer to the wife's trustee was based on a sufficient consideration, and is valid as against the creditors of the husband. (Hill on Trustees, 426; 3 Lead. Cas. in Eq., 404, *n ;* *Worrall* v. *Jacob*, 3 Merrivale, 272; *Stevens* v. *Olive*, 2 Bro. Chan. Ca., 90; *King* v. *Brewer*, id., 93, *n ;* *Compton* v. *Collison*, id., 377; *Fitzer* v. *Fitzer*, 2 Atk., 514; *Page* v. *Trufant*, 2 Mass., 161; *Simpson* v. *Simpson*, 4 Dana, 141; *Elworthy* v. *Bird*, 2 S. & St., 381.) The *onus* of proving notice to plaintiffs of the existence of the mortgage rests upon the defendants. (1 Greenl. Ev., § 74; 4 Kent's Com., 171, 172; *Curtis* v. *Lent*, 15 N. Y., 192; *Fort* v. *Burch*, 6 Barb., 60, 78; *Hine* v. *Dodd*, 2 Atk., 275; Pow. on Mort., 639, 640; *Jackson* v. *Elston*, 12 John., 452; *Jackson* v. *Given*, 8 id., 137, 140, 141.)

RAPALLO, J. The plaintiffs took from Osmond Reed a covenant, contained in the trust deed under which the plaintiffs claim, that Reed would, within ninety days after the date of the instrument, pay off any lien, mortgage or incumbrance, etc., existing on the chattels transferred, or any part thereof; and, by the same instrument, Mrs. Reed, and Nunez as her trustee, covenanted that said chattels should be received in full satisfaction for her support and alimony, on the condition, however, that all mortgages, etc., on said chattels should be promptly discharged, as therein above stipulated. The instrument then declares that Mrs. Reed does not admit the validity, as against herself, of any outstanding mortgage, etc., thereon;

and that Mr. Reed does not assume any liability beyond the amount of *existing liens* on said furniture and effects; and, in consideration of the premises, Nunez, the trustee, covenants to indemnify Reed agaist debts contracted by his wife.

This language plainly implied that there were mortgages or liens upon the property, and the payment of them by Reed was made a condition of the contract. Had the understanding of Nunez been that the property was unincumbered, and had the only object of the covenant been to protect Nunez or Mrs. Reed, in case they should afterward discover the fact to be otherwise, they would have taken a covenant that the property was free from incumbrances. The covenant to pay incumbrances existing on the property, within ninety days, and making the performance of that covenant a condition of the release of alimony, and the limitation of Reed's liability to the amount of existing liens, together with Mrs. Reed's protest against the validity, as to her, of any outstanding mortgages, etc., on the property, are inconsistent with the idea that the parties were dealing on the supposition that the property was free from incumbrance.

The insertion of these clauses in the instrument was sufficient to put the plaintiffs on inquiry as to the extent and description of the existing incumbrances referred to.

It was such notice as, in the language of the authorities, "would lead any honest man, using ordinary caution, to make further inquiries." (1 Younge & Coll. Exch., 328.) To deprive a party of the character of a *bona fide* purchaser, it is not necessary in such a case to show express notice of the particular instrument. (*Taylor* v. *Baker*, 5 Price, 306.) Notice of any fact calculated to put the party on inquiry is, in the absence of explanation by him, sufficient to charge him with notice of all instruments which an inquiry would have disclosed. The first class of cases enumerated by V. C. Wigram, in *Jones* v. *Smith* (1 Hare, 43, 55), to which he concedes the doctrine of constructive notice to extend, is "when the party charged has had actual notice that the property was incumbered or

affected, and the court thereupon bound him with constructive notice of *facts* and *instruments*, to a knowledge of which he would have been led by an inquiry after the charge, incumbrance, or other circumstance affecting the property, of which he had actual notice."

And the rule, as extracted from the numerous authorities, is stated by SELDEN, J., in *Williamson* v. *Brown* (15 N. Y., 362), to be that when a purchaser has knowledge of any fact sufficient to put him on inquiry, as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry and ascertained the extent of such prior right or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser. This presumption, however, may be rebutted by proof that the purchaser failed to discover the prior right, notwithstanding the exercise of proper diligence on his part.

The most obvious and natural inquiry to be made in this case would have been of Reed himself. Nunez was interposing between Reed and his wife for their mutual benefit; and it would have been the plain duty of Reed to have truly answered any inquiry Nunez might make as to the particulars of the incumbrances referred to. The presumption is that he would have done so. If he had given false information and Nunez had been misled thereby, after using due diligence to obtain correct information, he would have been excused. (*Williamson* v. *Brown*, 15 N. Y., 362.) Due diligence in such a case is the test of good faith. The whole doctrine of constructive notice, from recitals or references in deeds, is founded on the duty of the purchaser to use due diligence in examining the title. The omission to make the proper examination or inquiry is gross negligence, which prevents the purchaser from being regarded as *bona fide*. No inquiry whatever seems to have been made in the present case. If the natural and obvious inquiry was not even made of Reed, the vendor, it was one of the cases characterized in the authorities as willful blindness. The plaintiff did not even testify.

that he had not notice of the incumbrance. (See *Hawley* v. *Conner*, 4 Cow., 741.) He threw upon the court the duty of determining the case from the legal presumptions arising upon the facts. Conceding that the burden of showing notice was, in the first instance, upon the defendants, yet enough had been shown to establish a *prima facie* case of notice, sufficient to put the plaintiffs on inquiry, which was conclusive unless rebutted; and, not having been rebutted, the finding that the plaintiffs were purchasers in good faith was erroneous.

The most natural interpretation of the whole transaction would seem to be that Mrs. Reed and her trustee agreed to take the property subject to whatever incumbrances Reed may have put thereon, reserving her right to contest their validity as against her, and trusting to Reed's personal covenant to discharge them within ninety days, and to the condition that, if he should fail to do so, she should not be bound by the instrument, so far as it released her claims to alimony. The deed declares that the acceptance of the property in satisfaction of Mrs. Reed's claims is on condition that Reed shall pay off the encumbrances within ninety days. The undertakings of Nunez are "in consideration of the premises." If the condition was broken the arrangement failed, and the covenants became inoperative. Reed became liable, as before, for the support of his wife, and could not hold Nunez to his covenant of indemnity against her debts. The covenants were made dependent. Nunez therefore incurred no liability which could make him a *bona fide* purchaser. Reed's failure to pay the mortgage would relieve Nunez from the conditional liability he had assumed.

It may be that Mrs. Reed can still maintain her title to the property, as against the defendant's mortgage, on the ground that the property was hers, and not her husband's. When husband and wife are living together, a gift to the wife by the husband of chattels, at the time in the possession of the husband, and in the house occupied by both, unaccompanied by any actual change of possession, would be clearly invalid

as against creditors and purchasers. But if the chattels were bought for the wife, and brought into the house as her property, and notoriously recognized as such, never having been there as the property of the husband, we are not prepared to say that, in the absence of fraud, her title would not be valid, even as against creditors or purchasers from the husband, and stand upon the same footing as though she had herself made the purchases in her own name with funds given her by the husband. From the evidence, it would appear that the articles in question were notoriously purchased as presents for the wife, and placed in her possession as such. If so, we do not think it necessarily follows that because they were in the house, which she and her husband jointly occupied, they were in his possession, or legally subject to his control. This point is not, however, available to the plaintiffs on the present appeal.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

All concur, except PECKHAM, J., dissenting.

GROVER, J., concurs upon the ground that the trustee was not a purchaser for value.

Judgment reversed.